## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

KEEPERS, INC., d/b/a *KEEPERS*, f/k/a
Sidepockets, Inc., a Connecticut Corporation;
and AFTER DARK LLC., d/b/a ROMANTIX
ADULT EMPORIUM, a Connecticut Limited
Liability Company,

    Plaintiffs,

       v.

CITY OF MILFORD, CONNECTICUT,
a Municipal Corporation,

    Defendant.

Case No.

3:07cv1231(AWT)

August 13, 2007

### COMPLAINT

NOW COME Plaintiffs, Keepers, Inc. d/b/a *Keepers* (formerly known as Sidepockets, Inc.), and After Dark LLC, d/b/a Romantix Adult Emporium, and for their complaint against Defendant, state as follows:

### INTRODUCTION

1. This is a civil action wherein Keepers, Inc. is the Plaintiff in the pending case of Sidepockets, Inc. d/b/a Keepers v. the City of Milford, No. 3:03cv2134(AWT) ("*Sidepockets, Inc.*"). Sidepockets, Inc., d/b/a Keepers, is the same entity as Keepers, Inc., and filed a name

change only to Keepers, Inc. with the Connecticut Secretary of the State for the reasons set forth more particularly below. Plaintiff "After Dark" is not a party in the aforementioned pending civil action. Plaintiffs in this action pray for a declaratory judgment, damages, a temporary restraining order, and both a preliminary and permanent injunction to restrain and enjoin the City of Milford, Connecticut (sometimes "Milford," the "Defendant," or the "City"), as well as its agents, employees and representatives, from acting under color of state law to deprive the Plaintiffs of their rights, privileges and immunities secured to them by the Constitution of the United States.   Specifically, Plaintiffs seek to have this Court declare as unconstitutional both on its face and as applied, and to enjoin, the current version of Chapter 2.3 of the Code of Ordinances of the City of Milford adopted by the Defendants on May 7, 2007,   a copy of which is attached hereto as Ex. A and is incorporated herein by reference (sometimes referred to herein as the "Ordinance").

By the Defendant's adoption of the Ordinance, through its Board of Aldermen, Milford specifically repealed a prior version of Chapter 2.3 (referred to hereinafter), which is the subject of the pending lawsuit referenced above as *Sidepockets, Inc.*

## JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court for the resolution of the substantial constitutional questions presented here by virtue of 28 U.S.C. §1331 and 28 U.S.C. §1343(3),

the latter of which provides, in pertinent part, that the district courts shall have original jurisdiction over any civil action authorized by law to be commenced by any person:

> "To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States. . . ."

3.      The statutory law which further authorizes the institution of this suit is 42 U.S.C. §1983, which provides, in part:

> "Every person who, under color of any statute, ordinance, regulation, custom or usage, or any state or territory subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privilege or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4.      The prayer for declaratory relief is predicated upon Rule 57 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. §2201, which provides that:

> ". . .any Court of the United States upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ."

5.      The jurisdiction of the Court to grant injunctive relief is conferred to the Court by 28 U.S.C. §2202, which provides:

> "Further necessary or proper relief on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by

3

such judgment."

6.     The jurisdiction of the Court to assume supplemental jurisdiction for state law claims is conferred under 42 U.S.C. 1367(a).

7.     Plaintiffs are requesting that this Honorable Court grant a temporary restraining order as well as both a preliminary and permanent injunction against the Defendant, as well as its agents, employees and representatives, precluding them from enforcing the "Revised Ordinance" in any regard.  Further authority for the granting of the injunctive relief requested by Plaintiffs is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure.

8.     Authorization for the request of attorney's fees and costs is conferred by 42 U.S.C. §1988.

9.     To the best of Plaintiffs' knowledge and belief, no other action, civil or criminal, is pending in any state court involving the Plaintiffs regarding the specific activities and events at issue here.

10.     This suit is authorized by law to redress deprivations under color of state law of rights, privileges, and immunities secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

11.     Venue in this Court is appropriate pursuant to 28 U.S.C. §1391(b) and (c), as the various acts complained of occurred, and the Defendant is located, within the District of

4

Connecticut.

## PARTIES

12.     Plaintiff Keepers, Inc. is a Corporation duly organized under the laws of the State of Connecticut and was formerly known as Sidepockets, Inc. and filed a name change only with the Connecticut Secretary of State to Keeper's, Inc. so that the corporate name corresponds to its trade name, and is authorized and qualified to do business in the State of Connecticut.   The sole shareholder of Keepers, Inc. formerly known as Sidepockets, Inc. is Joseph Regensburger.   Plaintiff leases and occupies the building located at 354 Woodmont Road, in Milford, Connecticut, and operates therein a business known as *"Keepers"* a cabaret-style nightclub that features live, non-obscene, clothed and semi-nude ("topless") performance dance entertainment presented to the consenting adult public.

13.     Plaintiff Keepers, Inc. ("Keepers") serves alcohol on its premises pursuant to a Cafe Liquor License issued by the State of Connecticut Department of Consumer Protection Liquor Control Division, which allows for the retail sale of alcoholic liquor to be consumed on the premises.

14.     Plaintiff After Dark LLC ("After Dark") is a Connecticut Limited Liability Company doing business as Romantix Adult Emporium, and is located at 120 Boston Post Road in the city of Milford, Connecticut, 06460.

5

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

15.     Plaintiff After Dark operates a retail entertainment establishment that sells, exhibits, and distributes a variety of sexually explicit, but non-obscene, books, magazines, video tapes and motion picture filmfare.  The materials sold, exhibited and distributed are presumptively protected speech materials as guaranteed by the First and Fourteenth Amendments to the United States Constitution.  These materials are made available in their various forms to consenting adults only.

16.     Defendant City of Milford is a municipal government chartered under the laws of the State of Connecticut, which has enacted, through the actions of its Board of Alderman, the Ordinance challenged hereby.

17.     Because the Ordinance is facially overbroad, and because many of the Plaintiff's entertainers and customers would not have the interest and/or financial wherewithal to seek legal redress in regard to the violation of their own constitutional rights, the Plaintiffs have standing to assert, and do here so assert, not only their own rights in this action, but the rights of all of their employees, entertainers, future entertainers, and customers as well, and is entitled to facially challenge the Ordinance in its entirety.

## STATEMENT OF FACTS

18.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

6

19.     Since July, 2002, Plaintiff Keepers has operated on the premises located at 354 Woodmont Road, Milford, Connecticut, its cabaret-style nightclub pursuant to an adult-oriented business license obtained yearly from the City.

20.     Plaintiff After Dark has operated its retail entertainment establishment on the premises located at 120 Boston Post Road, Milford, Connecticut, since at least 1986.  Plaintiff After Dark has operated lawfully for over twenty years in this capacity, and when applicable has operated pursuant to an adult oriented business license obtained yearly from the City.

21.     In August of 2003, the Board of Aldermen of Milford, Connecticut, enacted an ordinance which amended Chapter 2.3 of the Code of Ordinances of the City of Milford, which provided for the licensing and regulation of certain defined "adult-oriented establishments," and which required that those defined "adult-oriented establishments" obtain an "adult-oriented business license" in order to operate within the City of Milford ("Prior Ordinance").

22.     At the time of enactment of the Prior Ordinance, both Plaintiffs' business establishments, at their respective locations, were fully licensed and lawfully existing in the City of Milford, under a previous version of Chapter 2.3 which was adopted in the late 1990's.

23.     Subsequent to the enactment of the provisions of the Prior Ordinance, the City contended that Plaintiff Keepers was operating an "adult-oriented establishment" within the purview of that ordinance.  More particularly, Milford contended that Plaintiff Keepers was

7

operating what was referred to, and what was defined in the Prior Ordinance as, an "adult cabaret."

24.    Because Plaintiff Keepers considered the provisions of the Prior Ordinance to be unconstitutional and in violation of the Federal Constitution, it filed the action referenced above as *Sidepockets, Inc.,* in order to have that ordinance declared unconstitutional and permanently enjoined. Plaintiff Keepers also sought damages, attorney fees, and other related relief.

25.    During the pendency of the *Sidepockets, Inc.* litigation, Milford, without notice to Keepers, repealed the Prior Ordinance and enacted the Ordinance on May 7, 2003.

26.    Since the enactment of the Ordinance by the City, Plaintiff Keepers' business at 354 Woodmont Road, Milford, Connecticut, has not been sold, leased or subleased; nor has there been a transfer of securities constituting a controlling interest of the business, whether by sale, exchange or similar means; nor has there been an establishment of a trust, gift, or other similar legal device which transfers the ownership or control of the business; nor have any of its licenses been revoked. The same is true with regard to Plaintiff After Dark.

27.    Subsequent to the enactment of the provisions of the Ordinance, the City has contended that both Plaintiffs herein were operating an "adult-oriented establishment" within the purview of that Chapter. More particularly, the City further contended that the Plaintiff Keepers operated what is referred to and defined in the Ordinance as an "adult cabaret," and

8

that Plaintiff After Dark operated what is referred to and defined in the Ordinance as an "Adult Bookstore or Adult Video Store", a "Sexual Device Shop" and maintained an "Adult Arcade".

28. The Defendant has threatened to enforce the Ordinance against the Plaintiffs.  These actions have been taken under color of law and on behalf of the Defendant City of Milford. The mere enactment of the Ordinance and the prospect of its enforcement has had the effect of precluding the exercise of First Amendment protected activities; has denied the Plaintiffs and their employees, customers and entertainers of their rights to engage in constitutionally protected speech and expression related activities, to lawfully earn a living, to freely associate, to be free from unreasonable and warrantless searches, to due process, and to equal protection created under the United States Constitution; and will result in other and significant constitutional deprivations to the Plaintiffs and others specified herein.

29.  Prior to the adoption of the Ordinance on May 7, 2007, and continuing after the adoption, Plaintiff Keepers desired to reconfigure its premises to include a restaurant and to otherwise make renovations and aesthetic changes that would have necessitated the expenditure of large sums of money.  These modifications would, Plaintiff Keepers believes, have led to significant increases in the engagement of First Amendment protected activities upon the premises and the realization of significantly higher business profits.   However, due to the existence of the Ordinance, Plaintiff Keepers  has been unwilling to make such expenditures

9

due to its fear that the Ordinance will be found to be enforceable and Keepers would be then unable to operate in any form of profitability due to the draconian provisions, restrictions, and regulations contained within the Ordinance. As a result, Plaintiff Keepers has been damaged as a result of the mere enactment of the Ordinance.

## UNCONSTITUTIONALITY OF CHAPTER 2.3

30. Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

31. Plaintiff Keepers is engaged (and desires to continue to be engaged) in the providing of entertainment in the form of expressive performance dance which is fully protected by the First Amendment to the United States Constitution. In addition, as a result of the enactment of the Ordinance, and by the physical nature of the business and the physical structure of the premises, Plaintiff Keepers is unable to comply with certain provisions of the Ordinance and, as such, the very existence of the Plaintiff Keepers' current business operation is placed in jeopardy by the Ordinance.

32. Plaintiff After Dark is engaged (and desires to continue to be engaged) in the providing of entertainment in the form of books, magazines, video tapes and filmfare, some of which are displayed on its business premises in "arcade booths," but as a result of the enactment of the Ordinance and by the nature of the physical structure of its business premises,

10

it is unable to comply with certain provisions of the Ordinance. As such, the very existence of Plaintiff After Dark's current business operation is placed in jeopardy by the Ordinance.

33.   Section 2.3-2 of the Ordinance defines "Sexually Oriented Business" as any of the following businesses:  "adult bookstore or adult video store," "adult cabaret," "adult motion picture theater," "a semi-nude model studio," "a sexual device shop," or "a sexual encounter center."

34.   In the Ordinance, an "adult cabaret" is defined as "a nightclub, bar, juice bar, restaurant, bottle club, or other commercial establishment, whether or not alcoholic beverages are served, which regularly features persons who appear semi-nude." "Regularly" is defined to mean and refer to "the consistent and repeated doing of the act so described."

35.   In the Ordinance, "Nudity" or "a State of Nudity" means "the showing of the human or the male or female genitals, pubic area, vulva, anus, anal cleft or cleavage with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any part of the nipple and areola."

36.   In the Ordinance, "Semi-Nude" or "State of Semi-Nudity" means "the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks. This definition shall include the lower portion of the human female breast, but will not include any

11

portion of the cleavage of the human female breasts exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part."

37.     Section 2.3-17(A) of the Ordinance states that "[i]t shall be a violation of this Chapter for a patron, employee, or any other person to knowingly or intentionally, in a sexually oriented business, appear in a state of nudity, regardless of whether such public nudity is expressive in nature."

38.     Section 2.3-17(B) of the Ordinance states that "[i]t shall be a violation of this Chapter for a person to knowingly or intentionally, in a sexually oriented business, appear in a semi-nude condition unless the person is an employee who, while semi-nude, remains at least six (6) feet from any patron or customer and on a stage at least eighteen (18) inches from the floor in a room of at least one thousand (1000) square feet."

39.     Section 2.3-17(c) of the Ordinance states that "[i]t shall be a violation of this Chapter for any employee who regularly appears semi-nude in a sexually oriented business to knowingly or intentionally touch a customer or the clothing of a customer on the premises of a sexually oriented business."

40.     In the Ordinance, "Adult Bookstore or Adult Video Store" means a commercial establishment which, as one of its principal business activities, offers for sale or rental for any form of consideration any one or more of the following: books, magazines, periodicals or other

12

printed matter, or photographs, films, motion pictures, video cassettes, compact discs, digital video discs, slides, or other visual representations which are characterized by their emphasis upon the display of "specified sexual activities" or "specified anatomical areas."

41.     In the Ordinance, a "principal business activity" is deemed to exist where the commercial establishment: (a) has a substantial portion of its displayed merchandise which consists of said items, or (b) has a substantial portion of the wholesale value of its displayed merchandise which consists of said items, or (c) has a substantial portion of the retail value of its displayed merchandise which consists of said items, or (d) derives a substantial portion of its revenues from the sale or rental, for any form of consideration of said items, (e) maintains a substantial section of its interior business space for the sale or rental of said items, or (f) maintains an "adult arcade."

42.     In the Ordinance, a business is deemed to maintain an "adult arcade" if said business is a place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically, or mechanically controlled still or motion picture machines, projectors, or other image-producing devices are regularly maintained to show images to five or fewer persons per machine at any one time, and where the images so displayed are characterized by their emphasis upon matter exhibiting "specified sexual activities" or "specified anatomical areas."

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS No. 417231

43.     In the Ordinance, "Specified Anatomical Areas" is defined as "less than completely and opaquely covered: human genitals, pubic region; buttock; and female breast below a point immediately above the top of the areola; and/or [ ] human male genitals in a discernibly turgid state, even if completely and opaquely covered."

44.     In the Ordinance, "Specified Sexual Activity" means, "intercourse, oral copulation, masturbation or sodomy; or [ ] excretory functions as part of or in connection with" other described activity.

45.     In the Ordinance, "Sexual Device" means "any three (3) dimensional object designed and marketed for stimulation of the male or female human genitals, anus, female breast, or for sadomasochistic use or abuse of oneself or others and shall include devices such as dildos, vibrators, penis pumps, and physical representations of the human genital organs." The Ordinance provides that "[n]othing in this definition shall be construed to include devices primarily intended for protection against sexually transmitted diseases or for preventing pregnancy."

46.     In the Ordinance, "Sexual Device Shop" means a commercial establishment that regularly features sexual devices, but provides that "[n]othing in this definition shall be construed to include any pharmacy, drugstore, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services, nor shall this definition be

14

construed to include commercial establishments which do not restrict access to their premises by reason of age."

47.    In the Ordinance, "Viewing Room" is defined as the "room, booth, or area where a patron of a sexually oriented business would ordinarily be positioned while watching a film, videocassette, digital video disc, or other video reproduction."

48.    Section 2.3-13 of the Ordinance sets forth numerous regulations "pertaining to exhibition of sexually explicit films or videos" for businesses which exhibit in a booth or viewing room on the premises, through any mechanical or electronic image-producing device, a film, video cassette, digital video disc, or other video reproduction characterized by an emphasis on the display of specified sexual activities or specified anatomical areas.

49.    Specifically, Section 2.3-13 of the Ordinance requires, inter alia, that the interior of the premises be configured in such a manner "that there is an unobstructed view from an operator's station of every area of the premises, including the interior of each viewing room but excluding restrooms, to which any patron is permitted access for any purpose. "An operator's station shall not exceed thirty-two (32) square feet of floor area. If the premises has two (2) or more operator's stations designated, then the interior of the premises shall be configured in such a manner that there is an unobstructed view of each area of the premises to which any patron is permitted access for any purpose from at least one of the operator's stations. The

15

view required in this paragraph must be by direct line of sight from the operator's station. It is the duty of the operator to ensure that at least one employee is on duty and situated in each operator's station at all times that any patron is on the premises. It shall be the duty of the operator, and it shall also be the duty of any employees present on the premises, to ensure that the view area specified in this paragraph remains unobstructed by any doors, curtains, walls, merchandise, display racks, or other materials or enclosures at all times that any patron is present on the premises."

50.     Section 2.3-13 of the Ordinance also mandates specific lighting requirements and signage to be placed on the premises as set forth in Sections 2.3-13(3) and 2.3-13(5), respectively.

51.     Section 2.3-18 of the Ordinance provides, "[n]otwithstanding anything to the contrary, for the purposes of this Chapter, an act by an employee that constitutes grounds for suspension or revocation of that employee's license shall be imputed to the sexually oriented business for the purpose of finding a violation of this Chapter, or for purposes of license denial, suspension, or revocation, only if an officer, director, or general partner, or a person who managed, supervised, or controlled the operation of the business, knowingly or recklessly allowed such act to occur on the premises. It shall be a defense to liability that the person to whom liability is imputed was powerless to prevent the act." A violation of any part of the

16

Ordinance will result in the suspension (§2.3-9) the sexually oriented business license which is required by §2.3-4 in order to operate a sexually oriented business, and a violation within a twelve (12) month period of a suspension shall result in license revocation (§ 2.3-10).

52.     Section 2.3-4(b) of the Ordinance requires a separate employee license. Said license application, pursuant to Section 2.3-4(c), requires an employee to complete an application which contains significant personal information as to the employee, which information is not exempt under the Connecticut Freedom of Information Act Chapter 14 Section 1-200 et seq. of the Connecticut General Statutes.

53.     Section 2.3-5(a)(4) of the Ordinance requires that a license for a sexually oriented business be denied if the premises is not in compliance with the interior configuration requirements of this Chapter. This conflicts with the protection of non-conforming use and structures under Section 8-2 of the Connecticut General Statutes. Therefore, this provision would mandate that the Plaintiff make structural changes to its property in order to receive a license as a sexually oriented business.

54.     Section 2.3-5(a)(5) of the Ordinance states that a license for a sexually oriented business can be denied when "[a]ny sexually oriented business in which the applicant has had an influential interest has in the previous five (5) years (and at a time during which the applicant had the influential interest): (i) been declared by a court of law to be a nuisance; or

17

(ii) been subject to an order of closure or padlocking."

55.    The Defendant has threatened to enforce the Ordinance against the Plaintiffs. These actions have been taken under color of law and on behalf of the Defendant City of Milford.  Future action by the Defendant to enforce the Ordinance will have the effect of precluding the exercise of First Amendment protected activities; will deny the Plaintiffs and their employees, customers and entertainers their rights to engage in constitutionally protected speech and expression related activities, to lawfully earn a living, to freely associate, to be free from unreasonable and warrantless searches, to due process, and to equal protection created under the United States Constitution; and will result in other and significant constitutional deprivations to the Plaintiffs and others specified herein.

56.    Defendant contends that Plaintiffs are subject to the licensing and regulatory provisions of the Ordinance, which will be administered and/or enforced by the Defendant through its agents, employees, and representatives.  All of the actions of these individuals and the attempted enforcement of the licensing and regulatory scheme by them, will be done in the course and scope of their official duties and under color of state law.

57.    Plaintiffs aver that the Ordinance is a means and a tool to put them out of business and will be enforced by the Defendant using unconstitutional means.  The Ordinance is not content-neutral law, but is legislation clearly aimed at the content of First Amendment

18

materials and expression, and is a means of harassing and closing certain entertainment facilities and denying a livelihood to entertainers and others subject to the Ordinance who are providing entertainment presumptively protected by the First Amendment. The right to engage in protected expression and to receive the same is a fundamental right guaranteed by the First Amendment to the United States Constitution, as applied to the state of Connecticut by the Fourteenth Amendment.

58.     The Ordinance is a lengthy and complex licensing and regulatory scheme containing numerous and various restrictions, regulations and prohibitions affecting the constitutionally protected conduct of the Plaintiffs, their agents, representatives, entertainers and employees, as well as the rights of those individuals from the consenting adult audience who desire to view and/or obtain the entertainment provided/made available by the Plaintiffs.

59.     The Ordinance is unconstitutional on its face and as applied to the Plaintiffs under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution for numerous and various reasons, including but not limited to the fact that:

a.     It effectuates an impermissible prior restraint upon constitutionally protected speech and expression related activities, contrary to the First and Fourteenth Amendments to the United States Constitution;

b.     It fails to provide for the procedural guarantees required under **Freedman v. Maryland**, 380 U.S. 51 (1965), and **FW/PBS v. Dallas**, 493 U.S. 215 (1990);

c.     It places unfettered discretion in the hands of the decision-maker regarding the

19

granting, denial, revocation and/or suspension of a license;

d.    It is an impermissible content-based restriction in violation of the First and Fourteenth Amendments;

e.    It is overbroad in its application to constitutionally protected activities, and violates **Renton v. Playtime Theatres,** 475 U.S. 41 (1986), in that it fails to offer a reasonable opportunity to open and operate an "adult" entertainment business within the City of Milford;

f.    It violates Plaintiffs' constitutional rights to free speech and expression in that it is overbroad and is not narrowly tailored in its restrictions, contrary to the First and Fourteenth Amendments to the United States Constitution;

g.    It violates the First and Fourteenth Amendments to the United States Constitution in that the restrictions on protected speech and expression are not necessary to a compelling governmental interest, and they are not the least restrictive means available to accomplishing any asserted governmental goal;

h.    It violates the First and Fourteenth Amendments to the United States Constitution in that the restrictions on protected speech and expression do not further a substantial governmental interest, they are not narrowly tailored to directly advance any such interest in that the restrictions upon protected expression are greater than is essential to further a permissible governmental interest, and they are not supported by any competent evidence establishing that such restrictions would be effective in furthering any substantial governmental interest.    In addition, a number of the restrictions are not within the government's power to enact;

i.    It violates Plaintiffs' equal protection rights under the Fourteenth Amendment in that it unconstitutionally discriminates against expressive businesses and its employees and entertainers based upon the content of speech, and further it creates and permits uneven treatment in the exercise of constitutionally protected rights in the State of Connecticut, and therefore permits differing treatment amongst individuals who desire to engage in constitutionally protected speech;

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS No. 417231

j.    It violates Plaintiffs' First Amendments rights and equal protection and substantive due process rights under the Fourteenth Amendment in that it unconstitutionally discriminates against, among, and between businesses and individuals engaged in substantially similar conduct;

k.    It violates the First Amendment rights of entertainers and patrons by placing restrictions on the conduct and location of entertainment such that it is impossible for those individuals to verbally communicate with one another;

l.    It unduly restricts the content of speech and expression, it impairs the communicative content of such speech and expression, and it impairs the rights of Plaintiffs and others to freely associate;

m.    It violates the First and Fourteenth Amendments to the United States Constitution by placing impermissible restrictions on the content of performance dance entertainment;

n.    It constitutes a taking without just compensation in violation of the Fifth and Fourteenth Amendments;

o.    It violates the First Amendment and the Due Process Clause of the Fourteenth Amendment by imposing strict liability, by impermissibly creating an irrebuttable presumption, and by creating liability without the requisite intent;

p.    It was not enacted upon a proper basis, nor supported by competent and material evidence;

q.    The consent to search provisions violate the First, Fourth and Ninth Amendments to the United States Constitution, in that they deprive the Plaintiffs of their right to be free from unreasonable, warrantless searches, and they further violate the doctrine of unconstitutional conditions by conditioning the grant of a governmental privilege (here, a license) upon the waiver of certain fundamental constitutional rights;

r.    It unduly, impermissibly, and unconstitutionally restricts the ability of

21

individuals and businesses to engage in First Amendment protected activities within the City of Milford;

s.   It contains numerous and various terms, phrases, and provisions which are impermissibly vague, ambiguous, and/or overbroad, and the definitions as contained therein are impermissibly substantially overbroad judged in relation to their plainly legitimate sweep;

t.   It violates the liberty and occupational liberty interests of the Plaintiffs and others by prohibiting them from engaging in a lawful, and indeed constitutionally protected, business and occupation within the City of Milford;

u.   It violates the substantive due process rights of the Plaintiffs and others;

v.   It imposes license fees that are impermissibly excessive and not commensurate with the costs of a constitutional license application process;

w.   It imposes licensing fees which are an impermissible tax on the exercise of First Amendment rights;

x.   It contains impermissible reasons to deny licensure or to suspend or revoke a license;

y.   It contains licensing restrictions and limitations upon the exercise of First Amendment protected activities which are both arbitrary and capricious, and which are not supported by any legislative record; and

z.   It deprives the Plaintiffs and others of their First Amendment rights without appropriate due process.

## PLAINTIFFS' STATE LAW CLAIMS - - SECTIONS 2.3-13 and 2.3-17(b) ARE IN VIOLATION OF SECTION 8.2 OF THE CONNECTICUT GENERAL STATUTES, WHICH PROTECTS NON-CONFORMING USES AND STRUCTURES WITHIN THE STATE OF CONNECTICUT

60.   Section 2-3-18(b) states, "it shall be in violation of this Chapter for a person to

22

knowingly or intentionally, in a sexually oriented business, appear in a semi-nude condition unless the person is an employee who, while semi-nude, remains at least six feet from any patron or customer and on a stage at least 18 inches from the floor in a room of at least 1000 square feet". Section 8-2 of the Connecticut General Statutes relating to the powers of the Zoning Commission to enact Zoning Ordinances states, in part, ". . . such regulations shall not prohibit the continuance of any nonconforming use or structure existing at the time of the adoption of such regulation".

61.     In order for Plaintiff Keepers to comply with Section 2.3-17 of the Ordinance, it would be required to make substantial structural changes to its premises, which has been operating as an "adult cabaret" with a license issued by the City of Milford under the previously enacted "adult oriented establishments" ordinance since 2002. Plaintiff Keepers affirmatively alleges that it is structurally impossible and/or unfeasible to make the physical changes mandated by Section 2.3-17 of the Ordinance.

62.     As more fully set forth previously in this Complaint, Section 2.3-13 of the Ordinance sets forth internal configuration requirements for businesses that exhibit sexually explicit films or videos. Plaintiff After Dark affirmatively alleges that it is structurally impossible and/or infeasible to make the physical changes mandated by Section 2.3-13 of the Ordinance.

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS NO. 417231

63.     The requirement that the Plaintiffs make the aforementioned structural changes in order to be in compliance with the Ordinance is in violation of Section 8.2 of the Connecticut General Statutes which protects all non-conforming uses and structures.

**COUNT I - INJUNCTION**

64.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

65.     Any action taken by the Defendant and others to enforce the Ordinance against the Plaintiffs herein will be taken under color of law and will deprive Plaintiffs of their constitutional and state rights as set forth herein, and will cause them irreparable harm for which damages are an inadequate remedy as a matter of law.

66.     Plaintiffs have a probability of success on the merits in regard to their constitutional claims and state law claims; the public interest weighs in favor of preventing deprivation of constitutional rights; and any balancing of harms between the parties weighs in favor of the Plaintiffs and against the Defendant in any attempt to enforce a clearly and hopelessly flawed unconstitutional and unlawful ordinance.  Accordingly, preliminary and/or temporary injunctive relief is warranted here to enjoin enforcement of the Ordinance.

67.     For the reasons set forth above and to preclude Plaintiffs and others from being denied their rights under the United States Constitution and State law, this Court should enter

SILVER & SILVER LLP • ATTORNEYS AT LAW
ONE LIBERTY SQUARE • NEW BRITAIN, CT 06051 • (860) 225-3518 • FAX (860) 348-0612 • JURIS No. 417231

an order enjoining, temporarily, preliminarily and permanently, Defendant, its employees, agents, and representatives, as well as all others who receive actual or constructive notice of the decision of this Court, from enforcing the Ordinance against the Plaintiffs and indeed anywhere in the City of Milford, Connecticut.

## COUNT II - DECLARATORY RELIEF

68.     Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

69.     This Court has the authority to declare the rights and other relations of the Plaintiffs and of the Defendant, and should do so here.

70.     Because of the questioned constitutionality and illegality of the Ordinance and its enforcement against Plaintiffs, Plaintiffs are entitled to a declaration by this Court in regard to the respective rights of the parties hereto.

71.     This Court should declare, for the reasons set forth above, that the Ordinance is unconstitutional both on its face and as applied to the Plaintiffs, and is in violation of the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

72.     The Court should further declare that Sections 2.3-13 and 2.3-17(b) of the Ordinance are in violation of Section 8-2 of the Connecticut General Statutes, as they have the effect of prohibiting the continuance of non-conforming uses and/or structures.

25

## COUNT III - DAMAGES

73.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

74.    All of the actions of the Defendant, by and through its agents, employees and representatives, in enacting the Ordinance and in seeking to enforce its unconstitutional and unlawful provisions against the Plaintiffs, have been undertaken, and will be undertaken, in the course and scope of official duties and under the color of state law.

75.    As a direct and proximate result of the enactment of the Ordinance and its unconstitutional and unlawful application and enforcement by the Defendant against the Plaintiffs, Plaintiffs have incurred and suffered significant and substantial damages, and will in the future suffer further significant and substantial damages, including but not limited to loss of constitutional rights, loss of earnings, lost business profits, loss of business reputation, having to pay unconstitutional licensing fees, and having to incur costs and attorney fees in seeking protection of its constitutional rights asserted herein.    Pursuant to 42 U.S.C. §1983 and common law, Plaintiffs are therefore entitled to damages for the deprivations of their constitutional rights.

76.    Plaintiffs are entitled to a judgment of damages in an amount to which they are found to be entitled at trial.

26

## COUNT IV - ATTORNEY FEES

77.    Plaintiffs incorporate herein by reference each and every paragraph above as though fully set forth herein.

78.    Plaintiffs, as a prevailing parties, ares entitled to an award of costs and attorney fees incurred herein pursuant to 42 U.S.C. §1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand relief against Defendant as follows:

A.    A temporary restraining order, and both a preliminary and permanent injunction restraining the Defendant, its officers, agents, employees, and representatives, and all persons acting by, through, or for it, from enforcing, applying and/or implementing the currently existing Chapter 2.3 of the Code of Ordinances of the City of Milford.

B.    A declaration that Chapter 2.3 of the Code of Ordinances of the City of Milford  is unconstitutional on its face and as applied to the Plaintiff as being in violation of the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

C.    A declaration that §§ 2.3-13 and 2.3-17(b) of the Ordinance violate Section 8-2 of the Connecticut General Statutes, which protects non-conforming uses and structures.

D.    Entry of an award of damages against the Defendant City of Milford and in favor of the Plaintiffs in  amounts to which Plaintiffs are found to be entitled.

E.    Entry of an award of costs and attorney fees incurred herein pursuant to 42 U.S.C. §1988.

F.    Entry of an award of such other and further relief as the Court deems just and proper in the circumstances.

27

Respectfully submitted,

Dated this 13ᵗʰ day of August, 2007.

_____
Daniel A. Silver, Esq., fed #ct 08183
Silver & Silver LLP
Counsel for Plaintiffs Keepers, Inc. and
After Dark, LLC
One Liberty Square
New Britain, Connecticut 06051
Telephone:      860-225-3518
Facsimile:      860-348-0612
Email:           daniel@lawsilver.com

Bradley J. Shafer, MI P36604*
Shafer & Associates, P.C.
Co-Counsel for Plaintiff Keepers, Inc.
3800 Capital City Boulevard, Suite 2
Lansing, Michigan 48906-2110
Telephone:      517-886-6560
Facsimile:      517-886-6565
E-mail:shafer3800@aol.com
*Pending admission pro hac vice


Bradley Jay Reich,                    *
Law Offices of Bradley Jay Reich
Co-Counsel for Plaintiff After Dark
LLC.
3025 South Parker Road, Suite 711
Aurora, Colorado 80014
Telephone:      303-751-3025
Facsimile:       303-751-5600
E-mail: Suite600@aol.com
 *Pending admission pro hac vice

28